ADAM SHOLL

*v.*

GERMAN COAL COMPANY.

*Filed at Ottawa January 25, 1887.*

1. EMINENT DOMAIN—*as an attribute of sovereignty—its nature.*  The
right of eminent domain, being an inherent attribute of sovereignty, exists
independently of written constitutions or statutory laws, though its exercise
is usually regulated by appropriate legislation.

2.  The right is founded on public utility and necessity, and its exercise is
a strictly legislative function, and, subject to the right of the courts to deter-
mine whether the use for which property is sought to be taken is a public
one, and whether the proceedings have been conducted according to the law
made on the subject, but the legislature is the exclusive judge of the neces-
sity or emergency justifying the exercise of the power.

3.  SAME—*whether the use to which it is proposed to appropriate the land
of another, is public or merely private.*  The business proposed to be done,
and the manner of doing it, must be looked at in determining whether the use
to which property is to be devoted will be a public or a private one.  If, from
the nature of the business and the way in which it is to be conducted, it is

clear no obligation will be assumed to the public or liability incurred other than such as pertains to all strictly private enterprises, then the use is private, and not public.

4. The use of a strip of land by a coal company, upon which to construct a tramway leading from the coal works to a railroad track, is a private use, and such strip can not be condemned, under the Eminent Domain act, for such use.

APPEAL from the County Court of Peoria county; the Hon. L. W. JAMES, Judge, presiding.

Mr. B. S. PRETTYMAN, for the appellant:

The petition does not allege, nor does the evidence show, that the proposed condemnation is for a public use, so as to give the court jurisdiction. Const. of 1870, art. 2, sec. 13; art. 4, sec. 30; art. 2, sec. 2; Mills on Eminent Domain, sec. 22; *Nesbit* v. *Trumbo*, 39 Ill. 116; *East St. Louis* v. *St. John*, 47 id. 466; *Smith* v. *Railroad Co.* 105 id. 518; *Durham* v. *Hyde Park*, 75 id. 377; *Railway Co.* v. *Pence*, 68 id. 529; *Railroad Co.* v. *Town of Lake*, 71 id. 336.

A private switch from a railroad to coal lands or a coal bank, which is not owned by the railroad company, but by individuals, for their own private use, is not a public highway, in the meaning of section 12, article 11, of the constitution. That section applies to public roads, and if this tramway was attached as a switch to the railroad, and was so laid as to be capable of being operated by or from the railroad, with its cars and engines, the railroad company having no title to it, it is not affected by section 12, article 11, of the constitution. It is private property, and for private use. *Koelle* v. *Knecht*, 99 Ill. 397; *Truesdale* v. *Grape Sugar Co.* 101 id. 568. See, also, *Ryerson* v. *Brown*, 35 Mich. 338.

Statutes authorizing the exercise of the right of eminent domain are subject to strict construction. The State has no right to take one man's property and give it to another.

*Harding* v. *Goodlett,* 3 Yerg. 40 ; *Taylor* v. *Porter,* 4 Hill, 140 ;
*Embry* v. *Conner,* 3 N. Y. 511; *Railroad Co.* v. *McComb,* 60
Me. 290; *Crear* v. *Crosby,* 40 id. 175; Mills on Eminent
Domain, secs. 22, 24.

Messrs. MUCKLE & WHITING, Messrs. McCULLOCH & McCUL-
LOCH, and Messrs. PUTERBAUGH & PUTERBAUGH, for the ap-
pellee :

The important question to be considered and determined
in cases of this character is, what constitutes a public use,
within the meaning of the constitution.   There is a conflict
in the decisions of the different States as to what is a public
use, which renders it difficult to define it in the light of  pre-
cedent.   As bearing on this question, see *Beekman* v. *Railroad
Co.* 3  Paige,  73 ;  *Wilson* v. *Railroad Co.* 2 Pet. 251 ;  *Blood-
good* v. *Railroad Co.* 18 Wend. 9 ; *Anderson* v. *Kerns D. Co.*
14 Ind. 199 ; *Reeves* v. *Wood Co.* 8  Ohio, (N. S.) 344; *Olm-
stead* v. *Camp,* 33 Conn. 550; *Railroad Co.* v. *Brainard,* 5
Seld. 109 ; *Gaslight Co.* v. *Richardson,* 63 N. Y. 000 ;  Cooley's
Const. Lim. 533.

A private corporation may be empowered to exercise the
right of eminent domain to obtain a way along which to lay
pipe for the transportation of oil to a railroad or navigable
river.   *Transportation Co.* v. *Oil and Coal Co.* 5 W. Va. 382.

In view of the large logging and lumber interests of some
of the States, it has been held that land might be condemned
for the erection of booms.   *Patterson* v. *Boom Co.* 3 Dillon,
465; *Lancaster* v. *Kennebec Co.* 62 Me. 272; *Lawler* v. *Boom
Co.* 56 id. 443 ; *Cottom* v. *Boom Co.* 22 Minn. 372.

In respect to condemnation for mills and mill purposes, see
*French* v. *Manufacturing Co.* 23 Pick. 220 ; *Woolen Mill Co.*
v. *Upham,* 5 id. 294; *Hazen* v. *Essex Co.* 12 Cush. 475 ; *An-
dover* v. *Sutton,* 12 Metc. 182; *Boston Mill Dam* v. *Newman,*
12 Pick. 467 ; *Tyler* v. *Beecher,* 44 Vt. 648 ; *Scudder* v. *Tren-
ton Falls Co.* 1 N. J. Eq. 694; *Fiske* v. *Manufacturing Co.* 12

Pick. 68; *Olmstead* v. *Camp*, 33 Conn. 532; *Todd* v. *Austin*, 34 id. 78; *Harding* v. *Goodlett*, 3 Yerg. 41; *Miller* v. *Troost*, 14 Minn. 365; *Harding* v. *Funk*, 8 Kan. 315; Mills on Eminent Domain, sec. 15; Cooley's Const. Lim. 534; *Holyoke Co.* v. *Lyman*, 15 Wall. 500.

Within the meaning of the law of eminent domain, land is taken for the public use whenever its taking is for the general public advantage. Cooley on Taxation, 77; *Ash* v. *Cummings*, 50 N. H. 591; *Jordan* v. *Woodward*, 40 Me. 317; *Burgess* v. *Clark*, 13 Ired. 109; *Trabue* v. *Macklin*, 4 B. Mon. 497; *County Court* v. *Greenwood*, 58 Mo. 175.

The expediency or necessity of exercising the right of eminent domain is a political question, and not a judicial one. Courts can not inquire into the necessity or propriety of the exercise of the right. *Railroad Co.* v. *Town of Lake*, 71 Ill. 333; *Railway Co.* v. *Railroad Co.* 97 id. 506; *Chicago* v. *Wright*, 69 id. 318; *Smith* v. *Chicago*, 105 id. 511; *Bankhead* v. *Brown*, 25 Iowa, 545; *Spring* v. *Russell*, 7 Greenlf. 292; Sedgwick on Const. Law, 511-514; *Varick* v. *Smith*, 5 Paige, 160; Mills on Eminent Domain, sec. 11.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The German Coal Company, a domestic corporation organized under the general Incorporation act, for the purpose of "mining and selling coal," filed a petition under the Eminent Domain act, in the county court of Peoria county, for the purpose of acquiring, by condemnation, the right of way over a narrow strip of land belonging to the appellant, Adam Sholl, and lying between the company's coal works and the Peoria and Pekin Union railroad. The piece of land sought to be condemned was wanted for an extension of a tramway belonging to the company, so as to connect it with the railway, and thus secure to the company railroad facilities for the transportation of its coal. The right to condemn the property for

such purpose was resisted by the defendant from the outset, as violative of the constitution of the State. The objection, however, was overruled, and after a very vigorous and somewhat protracted contest, the court entered an order of condemnation, upon the payment of $500 to defendant,—the amount of compensation and damages awarded by the jury. From that order the defendant appealed to this court, and has assigned, upon the record, various errors as grounds for reversal.

Most of the general principles constituting the law of Eminent Domain are well settled. The right to take private property for public use is generally conceded to be an attribute of sovereignty, and being such, it is not within the power of the State, by legislative grant, or otherwise, to surrender or barter it away. Being inherent, it exists independently of written constitutions or statutory laws; yet, in free governments like our own, where private rights are secured by wholesome laws and constitutional restrictions, the power to take private property for the common welfare remains dormant until the terms and conditions upon which it is to be exercised have been prescribed by appropriate legislation. The power or right in question is by some referred to the feudal theory of tenure—by others to the implied compact theory; but the better opinion, perhaps, is, that it is founded upon public utility and necessity. The exercise of the power is a strictly legislative function, and, subject to the right of the courts to determine whether the use for which property proposed to be taken is a public one, and whether the condemnation proceedings have been conducted according to law, the legislature is made the exclusive judge of the necessity or emergency justifying the exercise of the power. So far there is little or no contrariety of opinion. The chief difficulty, and the one which has led to an irreconcilable conflict in the cases, is, to discover some satisfactory test by which a public use may, in all kinds of cases, be distinguished

from a private one. Such is the difficulty here. The parties in this case are agreed, that if the use for which the property sought to be taken is a private one, there is no power or authority, under the constitution, to take it, and that, consequently, the order of the court below was without authority of law, and void. On the other hand, if the use, under the facts disclosed, is a public one, it is clear the court below had power and jurisdiction to make the order, however many errors may have intervened in the proceeding.

The question, then, whether the use in the present case is a private or public one, is not only directly presented, but it is of controlling importance in the event it should be determined against the petitioner, for whatever our views might be on the other questions discussed by counsel, the judgment below would have to be reversed. As before stated, the decided cases furnish no universal test by which it may be described or defined, and the attempts to do so have resulted in more or less conflict.

Without attempting to define a public use, or to give such a test, a few general observations on the subject may not be inappropriate. The expression "public use," *ex vi termini,* implies an interest or right of some kind in the public, and as the public can have no existence separate and apart from the people, of which it consists, it follows, that this interest or right, whatever it is, belongs to and is vested in the people. This being so, it is the duty of the State to see that it is properly protected. Without attempting, as we might if the question were an original one, to determine the nature and extent of this interest or right, we have no hesitancy in saying, that if the use is a continuing one, as it is in all cases where property is taken for the purposes of a public ferry, railway, or the like, the right or interest of the public is co-extensive with the use to which it is annexed, and that it is not within the power of those exercising the franchise to deprive the people of the benefits resulting therefrom. Persons or cor-

porations condemning property for such purposes, assume certain obligations and duties to the public, which they can not disregard without forfeiting their franchises, and otherwise rendering themselves liable. In all such cases, the character of the business proposed to be done, and the manner of doing it, must be looked to in determining whether the use will be a public or private one. If, from the nature of the business and the way in which it is to be conducted, it is clear no obligations will be assumed to the public, or liability incurred, other than such as pertain to all strictly private enterprises, it may safely be concluded the use is private, and not public. It is also believed to be generally, if not universally, true, that benefits resulting from a public use, capable of individual appropriation, are open to all alike, upon the same terms and conditions.

Viewing the question before us in the light of the general principles here stated, it is clear, the use for which the land is proposed to be taken in this case is not a public one. The coal, the coal works, and the present tramway, are, in the strictest sense, private property, and the public, generally, have no more interest in them or in the operation of the works, including the tramway, than they have in any other strictly private business. The same would be equally true after the proposed extension of the tramway. The extending of it to the railroad would not change its character, or the obligations of the company to the public, in the slightest degree. Without the consent of the owners of it, there is not a person in the State, outside of themselves, who would have the right to ride upon it on any terms that might be proposed, or to have carried upon it a single pound of freight. Indeed, nothing of the kind is contemplated or intended. It is manifest, the company now has, and after such extension of its track would still have, the right to use it for its own private business, exclusively. It could run it or cease to use it altogether, without violating any right in the public, or any duty

28—118 Ill.

which it owes to the people.   Clearly, this could not be so if the use were public, in the sense of the constitution.

This question, however, is not a new one in this court. It incidentally arose in *Millett* v. *The People*, 117 Ill. 294. The plaintiff in error in that case had been indicted, as the operator of a coal mine, for a failure to provide scales, and to weigh all coal taken out of the mine, as a basis for computing the wages of the miners, as required by an act of the legislature, approved June 14, 1883.   It was urged, by way of defence, that the act was unconstitutional, in this, that it singled out owners of coal mines as a distinct class, and imposed upon them burdens not imposed on other owners of property and employers of laborers.   To this it was replied, that the business of mining coal, like that of railways, public warehouses, etc., was of a public character, and that, therefore, the legislature had the right, for the protection of the public, to adopt such special regulations as were deemed necessary for that purpose, and that the act in question was nothing more than a reasonable exercise of that right.   The question, therefore, it will be perceived, was directly presented, whether the use in the operation of a coal mine is a public one, and it was held that it was not.   To the same effect is *Edgewood Railroad Co.'s Appeal*, 79 Pa. St. 257.

Upon the authority of these cases, and for the reasons stated, we are clearly of opinion that the use for which it is proposed to take appellant's property is a private and not a public one.   Having reached this conclusion, it is not necessary to consider other questions discussed in the briefs.

The judgment below is reversed, and the cause remanded, with directions to dismiss the petition.

*Judgment reversed.*