ALFRED PHOSPHATE COMPANY *v.* DUCK RIVER PHOSPHATE
COMPANY *et al.*

(*Nashville.*    December Term, 1907.)

1. **EMINENT DOMAIN**. Can be exercised only for the use of the
public whose rights are to be secured by law.

The right of eminent domain cannot be exercised in taking prop-
erty for private use, and can only be exercised in taking prop-
erty to be appropriated for the use of the public, whose rights
therein shall be secured by law and governmental regulation
and control, independent of the permission of the owner. It
is not sufficient that the public in general may be benefited as
a result of the exercise of the right of eminent domain.

Constitution cited and construed:  Art. 1, sec. 21.

Cases cited and approved:  Harding v. Goodlett, 3 Yerg., 52;
Clack v. White, 2 Swan, 540; Rice v. Alley, 1 Sneed, 51; Freight
Co. v. Memphis, 4 Cold., 420; Carson v. Moore, 2 Shannon's
Cases, 500; Ryan v. Terminal Co., 102 Tenn., 111; Milling Co.
v. Blair, and numerous cases in other jurisdictions cited in
the opinion, on pages 271-275.)

2. **SAME**. Same. Phosphate mining and manufacturing corpor-
ation cannot condemn a right of way; statute authorizing it is
unconstitutional.

A phosphate mining and manufacturing corporation organized and
existing under a statute (Acts 1875, ch. 142, sec. 11, compiled in
Shannon's Code, sec. 2333), authorizing such corporations, in
pursuance of the general law providing for the condemnation
of private property for works of internal improvements, to
condemn a right of way necessary for conducting its business
over the lands of any private person or corporation, which right
of way is thereby declared a public road, is not entitled to
condemn the right of way of a private railroad track owned
by another phosphate company, so as to transport its products

Phosphate Co. v. Phosphate Co.

to a railroad junction, where the only traffic which would pass over the road, if condemned, would be the private shipments of the petitioner seeking the condemnation, for the reason that the condemnation was not for a public use, even though other phosphate companies might ship over the road. The provision of the statute declaring the condemned right of way to be a public road could not change the character of its use. Such provision of the statute is unconstitutional because it undertakes to authorize the condemnation of property for private purposes.

Code cited and construed: Sec. 2333 (S.); sec. 1854 (M. & V.).

Acts cited and construed: Acts 1875, ch. 142, sec. 11.
See other citations under the first headnote.

3. **SAME.** Right of condemnation for a public purpose may be conferred upon a private corporation.

The right of condemnation of property for a public use can be conferred upon a private corporation, but if the condemnation is not for a public use, the right cannot be conferred either upon a private or public corporation. (*Post, p.* 276.)

4. **SAME.** Right of way on railroad tracks cannot be condemned, nor a part of a railroad's right of way when not wide enough.

The right of way on the tracks of an existing private railroad cannot be condemned, and where the petitioner seeks such condemnation only, and shows that right of way is not of sufficient width to build another railroad parallel with the railroad already there, the condemnation will be refused. (*Post, p.* 276.)

FROM HICKMAN.

Appeal in Error from the Circuit Court of Hickman County.—SAM HOLDING, Judge.

CLARENCE T. BOYD, for petitioner.

ROBIN J. COOPER, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this petition is to condemn certain property belonging to the defendant company in the exercise of the right of eminent domain claimed under the laws of Tennessee. Complainant is a mining and manufacturing corporation, organized under chapter 142, p. 232, Acts 1875, with the powers therein conferred. Among other powers granted, it is provided therein:

"The said corporation shall have the right, in pursuance of the general law authorizing the condemnation of private property for works of internal improvement as set forth in sections 1844 to 1867 inclusive, to condemn a right of way necessary for the transaction of the corporate business, not exceeding thirty feet in width, over the lands of any private person, or corporation, and such right of way is hereby declared to be a public road." Shannon's Code, sec. 2333.

It is shown in the petition that the Alfred Phosphate Company owns phosphate lands and properties consisting of three hundred acres in Hickman county, Tennessee.

It is averred in the petition that these lands are very

valuable, and from conservative estimates made are supposed to contain five hundred thousand tons of phosphate rock.

It is shown in the petition that the defendant Duck River Phosphate Company is also engaged in mining phosphate rock in Hickman county; that it was incorporated under the same provisions of the general incorporating act of 1875, with the same powers and privileges already enumerated.

It appears from the petition that the defendant company owns large phosphate mines, and is operating a private railroad from its said mines to the railroad of the Nashville, Chattanooga & St. Louis Railway Company, a distance of about 4½ miles.

It is alleged in the petition that the Nashville, Chattanooga & St. Louis Railway Company owns and operates as a part of its railroad system, a branch or spur track leading out from Centreville, Hickman county, Tennessee, to Swan creek, a distance of about eight miles.

It is then alleged that the defendant Duck River Phosphate Company, a mining and manufacturing corporation, organized and existing under the laws of Tennessee, owns certain phosphate mines and properties adjacent to or near the properties of the Alfred Phosphate Company, and in connection with its mines has built, constructed, and now owns a private railroad of thirty feet in width, more or less, leading from its mines to the terminus or junction of the Nashville, Chattanooga

& St. Louis Railway at Swan creek, the said road being about 4½ miles in length.

It is averred that this private railroad of the Duck River Phosphate Company, beginning at Swan creek in said county, and extending west for a distance of about two miles, is built along the banks of Duck river, and under a bluff of said river for this entire distance, extending in height some thirty or forty feet, so that it is impossible to parallel said track or construct a roadway along the banks of said river.

It is further shown that the defendant Tennessee Blue Rock Phosphate Company, a corporation organized and existing under the laws of Tennessee, has leased the mining properties of the Duck River Phosphate Company, including its 4½ miles of railroad, running from its mines to Swan creek, the terminus of the Nashville, Chattanooga & St. Louis Railway, and which is now operating under the same lease, which expires May 28, 1913.

It is then shown that the phosphate lands and properties of petitioner, the Alfred Phosphate Company, are located about one mile distant from a point on the line or private railroad of the Duck River Phosphate Company, at or near where said private railroad leaves the banks of Duck river.

It is further alleged that on account of the configuration of the county in this section of Hickman county, and on account of the location of the phosphate properties belonging to the petitioner, it is impossible to con-

struct a roadway or road necessary for carrying and delivering to the Nashville, Chattanooga & St. Louis Railway Company at Swan creek, or any other point on said railway, the phosphate rock of petitioner, and that the only outlet for its mining products is over that portion of defendant's private railroad, along the banks of Duck river to the terminus of the Nashville, Chattanooga & St. Louis Railway Company's line at Swan creek.

It is shown that the petitioner cannot parallel the private railroad track of defendant Duck river Phosphate Company on account of the very high bluff already described, and because there is no space left for the construction of another roadbed or railroad in addition to that already occupied by the railroad of defendant company.

It is averred in the petition that the petitioner has made repeated efforts, and an offer of $10,000, to purchase from defendant company the joint use or privilege and right to carry its phosphate rock over that portion of its private railroad along the banks of Duck river, which proposition was declined by defendants, who even refused to negotiate with petitioner on this subject.

It is averred that the cash proposition thus made to defendant companies was more than the actual cost of construction of this portion of defendant's private railroad over which it desired to have joint use and control for the carriage of its tonnage or phosphate rock.

Petitioner thereupon filed this petition under its char-

ter and the laws of Tennessee for the condemnation of that portion of the private railroad owned and operated by defendant companies along the banks of Duck river for a distance of about two miles or ten thousand feet.

Another fact averred in the petition is that the Nashville, Chattanooga & St. Louis Railway Company laid the rails and spikes on this 4½ miles of roadbed belonging to defendant Duck River Phosphate Company, and in addition has leased to defendants one of its railroad engines for the purpose of hauling cars to and from the mines of the Duck River Phosphate Company to the terminus of said railway company at Swan creek.

It is further averred that under its contract with said phosphate company, the Nashville, Chattanooga & St. Louis Railway Company still owns and controls said railroad and the rails and spikes for the laying of the same.

It is then averred that petitioner does not desire to condemn the road, rails, and spikes or iron on said portion of said track, since these items are not the property of either of the defendants, but belong to the Nashville, Chattanooga & St. Louis Railway Company.

It is alleged in the petition that the object for which it purposes to condemn such right of way was for works of internal improvement necessary for the transaction of its corporate business, and to declare said property a public road in order that other citizens and members of the community and the public might be entitled to its use and enjoyment.

A demurrer was interposed on behalf of the defendant companies to the petition, assigning the following causes:

"(1)  The petition seeks to condemn private property for private use in contravention of the constitution of Tennessee.

"(2)  The petitioner is a mining, quarrying, boring, and manufacturing corporation, chartered and organized under chapter 142, Acts of 1875. The objects and purposes of the corporation are purely of a private nature, and the company is organized and conducted for the personal benefit of the stockholders therein, and the act of the legislature under which it is organized is unconstitutional and void, in so far as it endows this company with the right of condemning the private property of others for the use of said company.

"(3)  The petitioner is a private corporation, organized for the individual gain of its members, and charged with no public duties or purposes, and cannot, under the constitution of Tennessee, have or exercise the right of eminent domain.

"(4)  The petition shows that the property described therein is now owned and used for the very purpose and in the manner for which it is sought to be condemned; and, if that use is a public one, petitioner cannot condemn the same without an express grant of authority from the legislature.

"(5)  The petition cannot be maintained, for the reason that it seeks to condemn the land upon which

defendants' railroad is located without condemning the railroad itself, which is a part of the land, and the one can not be condemned without the other."

The circuit judge sustained the demurrer and dismissed the petition, from which judgment the Alfred Phosphate Company appealed and has assigned errors. The only assignment is that the trial judge was in error in adjudging that petitioner had no right of condemnation under its charter and the laws of Tennessee, and in dismissing the petition with costs.

It is conceded by counsel that, if the present effort is to condemn the property of defendants merely for the private purposes of the petitioner, such condemnation would be unauthorized and in violation of the provisions of the State constitution regulating the exercise of the power of eminent domain. It is also admitted that, if chapter 142, p. 232, Acts 1875, granting to mining and manufacturing companies the power to condemn a right of way over the lands of any private person or corporation, contemplates a condemnation for the company's private use, the act would be unconstitutional, since the legislature has no power to authorize the taking of one man's property for the private use of another.

The insistence of counsel is that the object of the condemnation sought is for the public benefit of every citizen or landowner in this particular section of Hickman county, Tennessee, and for the public purpose of developing the phosphate industry and resources in this section of said county, and for the purpose of pro-

viding a vehicle of transportation for the products of the farm and phosphate mines to the terminus of the Nashville, Chattanooga & St. Louis Railway Company's line at Swan creek.

The constitution of the State of Tennessee provides:

"Article 1, sec. 21. That no man's particular services shall be demanded or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

This provision of the constitution has been frequently interpreted by this court to prohibit the taking of private property for a private use.

In *Memphis Freight Co.* v. *Memphis,* 4 Cold., 420, petitioners were granted a charter, by an act of the legislature, for the purpose of loading and unloading freight goods, cotton, etc., from boats on the Mississippi river at Memphis, and for the purpose of storing the same. The company was granted the right to build sheds on certain streets in Memphis, and the right to construct railroad tracks from the sheds referred to, to the Mississippi river, and for this latter purpose a petition was filed to condemn a right of way for the tracks. This court said:

"These railways are not designed for public travel, but as a means to enable the company to carry out the objects and purposes of their charter, in the prosecution of their business. The public is not interested in the erection of these railways, except in the facilities that may be afforded in the loading and unloading of boats.

It is purely a private enterprise, giving superior advantages to a corporation over those who have not the use of machinery."

It was further said:

"There is nothing in the charter showing it to be for a public use. There is no restriction on their charges for services; no duties are defined; no penalties for a violation of their duties; no regulations of toll. They are left free to act as private persons, in any manner that will best promote their interests."

The right of way sought to be condemned was a private, and not a public use, and that so much of the act as authorized the appropriation of private property under the right of eminent domain was in violation of the constitution and void. See *Harding* v. *Goodlett*, 3 Yerg., 52, 24 Am. Dec., 546; *Clack* v. *White*, 2 Swan, 540; *Rice* v. *Alley*, 1 Sneed, 51; *Carson* v. *Moore*, 2 Shannon's Cas., 500, wherein statutes granting the power of eminent domain for private purposes were declared unconstitutional.

The question of what constitutes a public use was considered by this court in *Ryan* v. *Terminal Co.*, 102 Tenn., 111, 50 S. W., 744, 45 L. R. A., 303, wherein it was said:

"So it may be said at the present time that anything which will satisfy a reasonable public demand for public facilities for travel, or for the transmission of intelligence or commodities, and of which the general public, under reasonable regulations, will have a definite and

fixed use, independent of the will of the party in whom title is vested, would be a public use."

The Tennessee cases on this subject uniformly hold that there can be no exercise of the right of eminent domain under the constitution unless property taken is to be appropriated to the use of the public, whose rights therein shall be secured by a governmental regulation. There are many cases in other States which hold that this power of eminent domain may be exercised when there is a public necessity, and the public in general will be benefited. It seems that the weight of authority is with the holdings of this court, to the effect that the right exercised must be for a public use, and not simply resulting in a public benefit, utility, or advantage. This distinction is illustrated by the case of *Varner* v. *Martin,* 21 W. Va., 534:

"(1)  The general public must have a definite and fixed use of the property to be condemned; a use independent of the will of a private person or private corporation in whom the title of the property, when condemned, will be vested; a public use which cannot be defeated by such private owner, but which public use continues to be guarded and controlled by the general public through laws passed by the legislature.

"(2)  This public use must be clearly a needful one for the public, one which cannot be given up without obvious general loss and inconvenience.

"(3)  It must be impossible, or very difficult, at least, to secure the same public uses and purposes in any

other way than by authorizing the condemnation of private property."

The court in that case denied the condemnation of the land, because in its judgment it was for a private use. *McQuillen* v. *Hatton*, 42 Ohio St., 202; *Jenal* v. *Green Island Drainage Co.*, 12 Neb., 165, 10 N. W., 547; *Sholl* v. *German Coal Co.*, 118 Ill., 427, 10 N. E., 199, 59 Am. Rep., 379; *Cozard* v. *Kanawha Hardwood Co.*, 139 N. C., 283, 51 S. E., 932, 1 L. R. A. (N. S.), 969, 111 Am. St. Rep., 779; *Healy Lumber Co.* v. *Morris*, 33 Wash., 490, 74 Pac., 681, 63 L. R. A., 820, 99 Am. St. Rep., 964.

In *Coster* v. *Tidewater Co.*, 18 N. J. Eq., 54, it appeared:

The tidewater company was incorporated for the purpose of draining the tidewater marshes adjoining Newark Bay and its tributary stream.

It was claimed this was a public purpose; that the revenue for the State would be largely increased from the taxes on said marshes when improved for cultivation; that it would require constant care and attention to keep the drained ditches in repair, giving employment to large numbers of men, and thereby adding to the prosperity of the State; that the marshes in their present condition interfere with the construction of highways, and other like reasons.

The court was of opinion that there was no use or benefit to the public in common; that the persons to be benefited by the proposed improvement were the par-

ticular individuals or estates whose lands were to be drained, and it was accordingly held that the use for which the condemnation was sought was private.

The petition for condemnation was dismissed. *Waddell's Appeal*, 84 Pa., 90; *Board of Health* v. *Van Hoesen*, 87 Mich., 533, 49 N. W., 894, 14 L. R. A., 114; *Amador Queen Mining Co.* v. *De Witt*, 73 Cal., 482, 15 Pac., 74; *Channel Co.* v. *R. R.*, 51 Cal., 269.

It must be conceded that the petitioning company is not impressed with a public character, but that it is carrying on a private business for the emolument of its owners and stockholders, that the public has no interest whatever in the operation of this business, and that the only purpose for which a right of way is demanded is to get the products of this private enterprise to market.

In *Cozard* v. *Kanawha Hardwood Co.*, 139 N. C., 283, 51 S. E., 932, 1 L. R. A. (N. S.), 969, 111 Am. St. Rep., 779, it was held that the right of eminent domain cannot be conferred to secure a right of way for a private railroad to transport timber to market. It was further held that the mere development of a locality by the establishment and maintenance of a private enterprise therein is not a public use for which the right of eminent domain may be exercised. In that case it appeared that defendants were conducting a general lumber business under the firm name of the Kanawha Hardwood Company. Defendants were pro-

ceeding to construct a railway over the lands of plaintiff for the purpose of hauling timber and timber products from the lands of defendant firm. The defendants were owners of standing timber, from which no public road was accessible, and to which no water was convenient. The road proposed led from a railroad station to the said standing timber, which could not be marketed without the construction of a railroad. Defendant firm did not offer to construct said railroad and become liable as common carriers for public transportation, but proposed to use the railroad for their sole and exclusive use in removing their timber and products from their own lands to the railroad station, and thence to the markets. The court held the act of assembly, authorizing the owners of timber lands to condemn a right of way for tramways and railways over the lands of other owners, for the exclusive use of the owners of the timber, unconstitutional and void.

The right of way sought to be condemned in the present case is necessarily for the exclusive use of the Alfred Phosphate Company. This company is not a common carrier, and is in no sense a public service corporation. The line of railroad would extend from the mines of petitioner to the junction of the N. C. & St. L. Railway, and the only tonnage that would pass over this road would be the private traffic of the petitioner.

It is argued, however, that such a railroad would provide an outlet for the products of other phosphate companies situated in that vicinity. But the fact that

such a railroad might benefit a limited class would not clothe it about with the character of a public use. This is illustrated by several cases already cited, wherein acts of the legislature authorized the organization of corporations for the purpose of draining marshes, and conferred upon them the power of eminent domain to condemn rights of way for ditches over the lands of others. It was held that the benefits were limited to the owners of the land, a limited class, and that it was not a public use or purpose. *Coster* v. *Tidewater Co.,* 18 N. J. Eq., 54.

We understand that under the authorities in Tennessee the public generally must have a right to the use independent of the permission of the owner, and further that the use of the public must be secured by law. There are no provisions made in the charter for the operation of such a railroad, nor any rates prescribed, nor does it possess any of the attributes of a public service corporation. The company is to be the sole arbiter of its affairs, and is not subject to governmental regulation or control.

But it is said that the charter authorizing the exercise of eminent domain provides that the right of way, when condemned, shall be a public road, and thus the legislature has impressed a public character upon this property. It is obvious that if this business is purely a private enterprise, a mere legislative declaration that the right of way shall be a public road would not change its character. The question is not whether the corpora-

tion sought to be endowed with the right of eminent domain is public or private, but whether the property sought to be condemned is to be used for a public purpose. If it is to be so used, the right of condemnation can be bestowed upon any private corporation; but, if not to be so used, it cannot be conferred either upon a private or public corporation.

Section 11, c. 142, p. 247, Acts 1875, under which the petitioner is seeking to exercise the right of eminent domain in the present case, was before this court at Knoxville, September term, 1906, in the case of *Niota Milling Co.* v. *S. P. Blair*, coming from McMinn county. This section was declared unconstitutional, because it undertook to authorize mining and manufacturing corporations to condemn property for private purposes.

It was adjudged therein that, the condemnation being for a private purpose, the legislative declaration that it should be a public road would not render the act valid.

Another insuperable difficulty in the way of petitioner is that it does not seek to condemn the private railroad, which it concedes to be the property of the Nashville, Chattanooga & St. Louis Railway, but it only seeks to appropriate the right of way. This petition admits that the right of way in question is not of sufficient width to build another railroad parallel with the railroad already there, and yet it does not seek to condemn the existing railroad, but only the right of way. This ground of demurrer is also well taken.

Affirmed.