TENNESSEE COAL, IRON & RAILROAD CO. *v.* PAINT ROCK
FLUME & TRANSPORTATION CO.

(*Knoxville.*   September Term, 1913.)

1. **EMINENT DOMAIN.** Appropriation of land.   Exclusive
remedies.

Where land has been occupied by a public service corporation,
which did not exercise its power of eminent domain, the
remedy given the landowner by Shannon's Code, sec. 1865, to
petition for a jury of inquest to assess the damages, or to
bring an action at law for damages, is exclusive, and the land-
owner cannot bring ejectment or enjoin the corporation from
using his land.  (*Post, p.* 282.)

Code cited and construed:  Secs. 1861-1866 (S.).

Cases cited and approved:  Colcough & N. & N. R. R. Co. v.
Adams, 39 Tenn., 172; Tennessee & A. Co. v. Adams, 40 Tenn.,
597; Railroad v. Cochrane, 71 Tenn., 479; Parker v. Railroad,
81 Tenn., 670; Saunders v. Railroad, 101 Tenn., 206; Doty v.
Telephone & Telegraph Co., 123 Tenn., 329.

2. **EMINENT DOMAIN.** Power of condemnation. "Public use."

That the number of persons who can use, and that the area
served by a flume company, down whose flume lumber and bark
from the mountains is floated, is small, will not render the
flume a nonpublic use, for a public use may be limited to the
inhabitants of a small or restricted locality, and hence the
legislature could properly delegate the power of eminent do-
main to flume companies.  (*Post, pp.* 284, 285.)

Cases cited and approved:  Gilmer v. Line Point, 18 Cal., 229;
Talbot v. Hudson, 16 Gray (Mass.), 417; Township Board of
Education v. Hackmann, 48 Mo., 243; Coster v. Tide Water Co.,
18 N. J. Eq., 54; Pocantico Waterworks v. Bird, 130 N. Y., 249;
Dietrich v. Murdock, 42 Mo., 279; De Camp v. Hiberina Under-
ground R. Co., 47 N. J. Law, 43; Collier v. Railroad, 113 Tenn.,

Railroad v. Transportation Co.

96; Cotton v. Miss., etc., Boom Co., 22 Minn., 372; West Va. Transp. Co. v. Volcanic Oil Co., 5 W. Va., 382; Ryan v. Terminal Co., 102 Tenn., 111.

Cases cited and distinguished: Cozard v. Kanawha Hardwood Co., 139 N. C., 283; Phosphate Co. v. Phosphate Co., 120 Tenn., 260.

3. COURTS. Rules of decision. Previous decisions.

Since Acts 1875, ch. 142, entitled "An act to provide for the organization of corporations," and subsequent amendments (Acts 1887, ch. 16; Acts 1893, ch. 11), all of which were entitled "An act to amend an act to provide for the organization of corporations," were held constitutional, although they gave the various corporations organized thereunder the power of eminent domain, Acts 1901, ch. 138, entitled "An act to amend an act for the organization of corporations," and providing for the organization of flume companies, must be treated as constitutional, although giving such companies the right of eminent domain. (*Post, p.* 288.)

Acts cited and construed: Acts 1901, ch. 138; Acts 1875, ch. 142; Acts 1887, ch. 16; Acts 1893, ch. 11.

Cases cited and approved: Telephone Co. v. Telephone & Telegraph Co., 125 Tenn., 270; Kelly v. State, 123 Tenn., 516; Richardson v. Young, 122 Tenn., 471; State, ex rel., v. Nashville Baseball Club, 154 S. W., 1151.

4. STATUTES. Title of acts. Validity.

It being customary to endow public service corporations with the power of condemnation, an act entitled "An act to provide for the organization of corporations" has a broad enough title to embrace a grant of such power, and consequently an amending act, entitled "An act to amend an act entitled 'An act to provide for the organization of corporations,'" which gave the power of eminent domain to flume corporations, is not invalid, under Const., art. 2, sec. 17, because the body of the act is broader than its caption. (*Post, pp.* 289, 290.)

Case cited and approved: Memphis St. Ry. Co. v. State, 110 Tenn., 598.

Railroad v. Transportation Co.

### 5. INJUNCTION. Right to maintain injunction.

Even though a flume company was not authorized by law to appropriate water to run its flume, a riparian owner, who stood by and without objection allowed it to erect a valuable flume, which would be worthless without the water from his stream, cannot then enjoin such appropriation of water, for the granting of an injunction is always a matter of discretion, and the court should refuse one when it will destroy valuable property of one party without any corresponding benefit to another. (*Post, p.* 290.)

Cases cited and approved: Madison v. Cooper Co., 113 Tenn., 331; Bank & Trust Co. v. Hotel Co., 124 Tenn., 649.

### 6. INJUNCTION. Denial. Recovery of damages.

Where a riparian owner sought to enjoin a flume company from operating its flume, which it had placed through his land, without condemnation, and from appropriating the waters of a stream which ran through his property, and also damages, but alleged no ground of equitable jurisdiction save the right to injunctive relief, the denial of his injunction precludes the court of chancery from taking jurisdiction of his suit for damages. (*Post, p.* 292.)

Cases cited and approved: Bank & Trust Co. v. Hotel Co., 124 Tenn., 649; Swift & Co. v. Memphis Cold Storage Warehouse Co., 158 S. W., 480.

### 7. INJUNCTION. Right to maintain.

That a flume company organized as a public service corporation will not transport for the public generally is no ground for an injunction in favor of one whose land abutted on the stream which fed the flume and whose property had been taken without condemnation; the persons injured by the refusal of the company having their right of redress in appropriate proceedings, and the State having the right to dissolve the company for a breach of public duty. (*Post, p.* 293.)

---

Railroad v. Transportation Co.

---

FROM COCKE.

---

Appeal from Chancery Court, Cocke County.—HAL H. HAYNES, Chancellor.

H. J. & W. D. McSWEEN, for appellant.

HOLLOWAY & HICKEY, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by complainant, the Tennessee Coal, Iron & Railroad Company, to enjoin the defendant, the Paint Rock Flume & Transportation Company, from the occupation of complainant's land with a flume, and from diverting to said flume a portion of the waters of Paint Rock Creek. The bill also sought to recover damages from defendant. Answer was filed, and the chancellor dismissed the bill, and complainant has appealed to this court.

The defendant company was organized under chapter 138 of the Acts of 1901. This act provides for the incorporation of flume companies, and confers upon such companies the right of eminent domain, authorizing them to condemn "a right of way not more than thirty feet over the lands of private individuals in pursuance of the general law authorizing condemnation

of the easement of right of way for works of internal improvement as set forth in sections 1325 to 1348, inclusive, in the Code of Tennessee.''

The said act also authorizes flume companies to erect and operate flumes ''for the reception of and passage of water, for the floating of lumber, tan bark, and to do and perform the general duties of common carriers of goods so far as practicable.''   The act further provided that companies organized thereunder should furnish equal facilities to all persons without discrimination in service or charges, and imposed upon such corporations all the duties, responsibilties, and liabilities now resting on other *quasi* public corporations under the laws of the State of Tennessee.

It was averred in the bill that the condemnation proceedings by which defendant claimed to have acquired a right of way for its flume across complainant's land were irregular and illegal in several particulars.   There has been much discussion in argument and briefs of counsel with reference to the said proceedings.   We think, however, it is unnecessary at this time to consider the propriety of the methods used by defendant in obtaining this right of way.   The flume has been erected and rightfully or wrongfully, defendant company has come into possession of a right of way across complainant's land, and is occupying the same with its flume.

Our Code provisions as they appear in Shannon's Compilation are as follows:

Section 1865: "No person or company shall, how-ever, enter upon such land for the purpose of actually occuping the right of way, until the damages assessed by the jury of inquest . . . have been actually paid; or, if an appeal has been taken, until the bond has been given to abide by the final judgment as before provided."

Section 1866: "If, however, such person or com-pany has actually taken possession of such land, oc-cupying it for the purpose of internal improvement, the owner of such land may petition for a jury of in-quest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages as upon the trial of an appeal from the return of a jury of inquest."

This court has repeatedly held that the several rem-edies, given by our statutes to parties whose land has been occupied for purposes of internal improvement by public service corporations, are exclusive. That is to say, the landowner must obtain redress in the con-demnation proceedings, or in an appeal therefrom (Shannon's Code, sec. 1861), or he may, upon his own petition for a jury of inquest, have his damages as-sessed, or he may sue for damages in the ordinary way (Shannon's Code, sec. 1866). He cannot bring a suit of ejectment against the corporation, nor is he entitled to an injunction which will have the effect of dispossessing such corporation from a right of way

already occupied by it. *Colcough* v. *N. & R. R. Co.*, 2 Head, 172; *Tennessee & A. Co.* v. *Adams,* 3 Head, 597; *Railroad* v. *Cochrane,* 3 Lea, 479; *Parker* v. *Railroad,* 13 Lea, 670; *Saunders* v. *Railroad,* 101 Tenn., 206, 47 S. W., 155; *Doty* v. *Telephone & Telegraph Co.,* 123 Tenn., 329, 130 S. W., 1053, Ann. Cas., 1912C, 167.

The flume company, therefore, if it be a public service corporation lawfully endowed with the right of eminent domain, cannot be deprived of the easement which it has obtained over the lands of complainant, even though it may have secured such right of way in an illegal manner. The complainant must look to its statutory remedies for redress.

The complainant, however, insists that the act conferring the right of eminent domain upon companies such as this is unconstitutional, for the reason, as it urges, that a flume is not a public use, and a flume company cannot be considered a public service corporation, or corporation for internal improvement, which may legally be clothed with the right of eminent domain. More particularly, as applicable to the facts of this case, complainant maintains that, at any rate, this defendant company is not undertaking to serve the public, and its flume is not devoted to the public use, nor adapted to such a use.

It appears that the Patterson Lumber Company owns a large body of timber in Cocke and Green counties in the mountains some eight or nine miles from the railroad. It was found very expensive to haul this timber out of the mountains to a place where it could

be transported to market. Persons interested in the ownership of the Patterson Lumber Company accordingly incorporated the defendant flume company, and proceeded to construct a flume from the property of the Patterson Lumber Company in the mountains to the railroad, a distance of about nine miles. The flume is fed by the waters of Paint Rock Creek, and is constructed along the banks of this creek, passing through the property of complainant for about one mile.

The proof shows that the greater part of the lumber, by far, that has been transported in this flume was the property of the Patterson Lumber Company. The flume company, however has transported lumber and bark for other patrons and exhibits certain contracts which it now has for further service to individuals other than the Patterson Lumber Company.

This flume runs from a rough and sparsely settled country. There is however, undoubtedly valuable timber and bark in this section, which can be gotten out much more readily by means of the flume than in any other way. While the greater part of this timber, bark, etc., is owned by the Patterson Lumber Company other parties, including the complainant, have extensive and valuable holdings in this locality, and the flume can be operated to the advantage of all these persons. Under its charter, the flume company is required to serve all such persons alike, without discrimination in charges or the character of service rendered.

We are of opinion that the fact that only a comparatively small number of people, will be benefited

by the operations of this flume does not deprive the enterprise of its public nature.

A public use may be limited to the inhabitants of a small or restricted locality. *Gilmer* v. *Lime Point,* 18 Cal., 229; *Talbot* v. *Hudson,* 16 Gray (Mass.), 417; *Township Board of Education* v. *Hackmann,* 48 Mo., 243; *Coster* v. *Tide Water Co.,* 18 N. J. Eq., 54; *Pocantico Waterworks* v. *Bird,* 130 N. Y., 249, 29 N. E., 246.

An enterprise does not lose the character of a public use because of the fact that its service may be limited by circumstances to a comparatively small part of the public. *Dietrich* v. *Murdock,* 42 Mo., 279; *De Camp* v. *Hibernia Underground R. Co.,* 47 N. J. Law, 43.

A belt line railroad (*Collier* v. *Railroad,* 113 Tenn., 96, 83 S. W., 155) has been held by this court to be a public service corporation, although under the facts of that case it was apparent that said corporation could serve directly only a limited portion of the public. Although the number of persons who will be benefited by the operation of this flume is small, the section through which it passes being sparsely settled, nevertheless, it may be operated to the great advantage of all persons owning timber and bark in this community, and we are satisfied that such a flume may properly be considered as of public use.

Boom companies have been held to be lawfully endowed with the right of eminent domain. *Cotton* v. *Miss., etc., Boom Co.,* 22 Minn., 372; *Patterson* v. *Miss., etc., Boom Co.,* Fed. Cas., No. 10,829. So have oil

Railroad v. Transportation Co.

pipe lines (*West Va. Transp. Co.* v. *Volcanic Oil Co.,* 5 W. Va., 382), and canals and waterways (15 Cyc., 594 and cases cited).

As said in *Ryan* v. *Terminal Co.,* 102 Tenn., 111, 50 S. W., 744, 45 L. R. A., 303, anything which will "enlarge the resources, increase the industrial energies, promote the productive power of, or afford increased facilities for, the rapid exchange of thought or trade, or otherwise answer the growing needs of the community as such," may be treated as a public use, and, as before seen, the fact that the particular community served is small does not affect the question.

The legislature, therefore, was well within constitutional limitations in authorizing the incorporation of flume companies as public service corporations, and conferring upon such companies the right of eminent domain. These companies may be of the utmost advantage in this State, where we have numerous bodies of fine timber inaccessible to railroads, rivers, and other ordinary means of transportation. The fact that such companies generally serve sparsely settled communities is no reason for denying them the right of eminent domain. Such communities are as much entitled to the benefit of our statutes for internal improvements as are more populous communities.

Neither the case of *Cozard* v. *Kanawha Hardwood Co.,* 139 N. C., 283, 51 S. E., 932, 1 L. R. A. (N. S.) 969, 111 Am. St. Rep., 779, nor the case of *Phosphate Co.* v. *Phosphate Co.,* 120 Tenn., 260, 113 S. W., 410, 22 L. R. A. (N. S.), 701, are in point, although both

have been pressed upon the consideration of the court by counsel for complainant. In *Cozard* v. *Kanawha Hardwood Company,* as pointed out by this court in *Phosphate* v. *Phosphate Company, supra,* the defendants seeking to exercise the right of eminent domain proposed to use the railroad which they intended constructing for their sole and exclusive use in removing their timber and products from their own lands to the railroad station. In the case of *Phosphate Co.* v. *Phosphate Co., supra,* this court observed that the phosphate company seeking to condemn a right of way sought such right of way for its exclusive use, and it was also said that the phosphate company was not a common carrier, and was in no sense a public service corporation.

It is next insisted that the act authorizing the incorporation of flume companies (chapter 138, Acts of 1901) is invalid under section 17, article 2, of the constitution of Tennessee, because the body of the act is broader than the caption.

The caption of this act is:

"An act to amend an act entitled 'An act to provide for the organization of corporations,' passed March 19, 1875, and to provide for the organization of flume companies."

In the body of the act, as heretofore seen, the right of eminent domain is conferred upon flume companies, and it is contended that such a provision is outside the scope of the act as indicated in its caption.

The general incorporation act (chapter 142 of the Acts of 1875) is entitled "An act to provide for the organization of corporations," and under this title there are provisions in the original act for the organization of railroad companies, telegraph companies, levee companies, and turnpike companies, upon all of which companies the act confers the right of eminent domain.

Chapter 16 of the Acts of 1887 is entitled "An act to amend an act entitled 'An act to provide for the organization of corporations,' passed March 19, 1875." This act provides for the incorporation of incline, cable, or cog railroad companies, and confers upon such companies the right of eminent domain.

Chapter 11 of the Acts of 1893 is entitled "An act to amend an act entitled 'An act to provide for the organization of corporations,' approved March 23, 1875, so as to authorize the organization of railroad terminal corporations, and to define the powers, duties and liabilities thereof." This act confers upon terminal companies the right of eminent domain.

From the foregoing it will be seen that since 1875 it has been supposed in Tennessee that a provision conferring the power of eminent domain upon a public service corporation was germane to the title of the general incorporation act of that year. In the original act, such provision was made with respect to four classes of corporations, and in at least two amendments to the act of 1875, as shown above, like provision has been made with reference to public service corpora-

Railroad v. Transportation Co.

tions, with nothing in the caption of any of the acts to especially indicate a grant of the power of eminent domain.

Under the authority of the original act, and these amendments, rights of way have been condemned and acquired in Tennessee of very great value. The act of 1875 and these amendments have been treated as constitutional, and as legally endowing the several corporations mentioned with the right of eminent domain for nearly forty years. This is a fit case for the application of the rule announced in *Telephone Co.* v. *Telephone & Telegraph Co.*, 125 Tenn., 270, 141 S. W., 845, 43 L. R. A. (N. S.), 550, namely: "It is a doctrine of the law that when acts have been long treated by the court as constitutional, and important rights have been based thereon, it may refuse to further consider the question."

See, also, *Kelly* v. *State,* 123 Tenn., 516, 132 S. W., 193; *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664; *State, ex rel.,* v. *Nashville Baseball Club,* 154 S. W., 1151.

It is, however, not necessary to invoke this doctrine. The caption of the act of 1875 indicates that it is an act to provide for the organization of every kind of corporation. It is known as the "General Incorporation Act." It being usual and customary to endow public service corporations with the right to condemn property necessary for their use, under a caption broad enough to justify a provision for the incorporation of such companies, a further provision for the right

128 Tenn. 19

of eminent domain is germane, and falls within the natural purview of such legislation.

So that this clause conferring the power of eminent domain upon flume corporations in chapter 138, Acts of 1901, is within the scope of the caption of chapter 140 of the Acts of 1875. The act of 1901 being an amendatory act, properly reciting the title of the original act of 1875, and containing matter embraced within that title, is a valid, constitutional enactment. The particulars of such an amendatory act need not be shown in its own title. *Memphis St. Ry. Co. v. State,* 110 Tenn., 598, 75 S. W., 730, and cases cited.

It is next insisted by the complainant that, if the constitutionality of chapter 138 of the Acts of 1901 be conceded, nevertheless, under said act, the flume company was without power to condemn water rights. The act in terms only authorized such companies to "construct, equip and operate flumes, and for this purpose" to have "the right to condemn a right of way not more than thirty feet over the lands of private individuals in pursuance," etc.

The complainant maintains that its rights as a riparian owner to the waters of Paint Rock Creek have been infringed by the defendant company; that a material portion of the water of said creek has been diverted to the use of the flume; that said creek was valuable to the complainant for water power; and that, accordingly, complainant is entitled to have defendant restrained from such appropriation of the water of said creek. The argument is that flume companies are

only authorized by the act of 1901 to condemn rights of way, and are without authority to condemn water rights. *Water Co.* v. *Scott,* 111 Tenn., 324, 76 S. W., 888, is cited for this proposition. By chapter 26 of the Acts of 1911, flume companies were empowered to condemn water rights, but this suit was originated prior to the passage of the last act. It is not necessary to consider the effect of the act of 1911 on the rights of the parties, as injunctive relief must be denied complainant for another reason.

It appears that the complainant had notice in advance of the erection and equipment of this flume and that the flume was to be constructed and operated with the waters of Paint Rock Creek. A letter from complainant's local counsel to an officer of complainant company is in the record, in which counsel speaks of the proposed flume, and states that his plan is to ignore the condemnation proceedings, and after the flume is erected to enjoin its operation.

Whether there was sufficient water power on the lands of complainant from this creek as it formerly existed to be of practical value is doubtful on the record. We do not think it was of much value. At any rate, it never had been utilized, and there is no indication that complainant ever intended to utilize it.

If this water power was worth anything under the facts we have set out, complainant should be remitted to its action at law to recover damages for any diminution of such power in consequence of the erection of

the flume.   An injunction should not be awarded at this time against defendant.

Complainant stood idly by and permitted the building of this flume at a cost of about $20,000.   The value of this water power to complainant as it formerly existed is not definitely established upon the record. The issuance of an injunction is always a matter of discretion with the court.   The court should compare the consequences in considering the propriety of an injunction in a case like this.   It should refuse to issue an injunction when the effect will be to destroy valuable property of one party without any corresponding benefit to the other.

Under the rules laid down in *Madison* v. *Copper Co.*, 113 Tenn., 331, 83 S. W., 658, and *Bank & Trust Co.* v. *Hotel Co.*, 124 Tenn., 649, 139 S. W., 715, 39 L. R. A. (N. S.), 580, complainant is not entitled to an injunction as herein prayed against defendant with respect to the use of the waters of Paint Rock Creek.

While complainant, in addition to the injunction sought, asks for the recovery of damages to its property, we do not think such damages can be allowed in this case.   There was no occasion to apply to a court of chancery for relief on this account.   There is no allegation of insolvency as to defendant company, nor is there any other ground of equitable jurisdiction, save the alleged right to injunctive relief.   We have seen that the complainant is not entitled to an injunction.   Therefore the only ground for equitable interference in the case has failed, and the chancery court

has no jurisdiction under such circumstances to determine mere matters of unliquidated damage to property. *Bank & Trust Co.* v. *Hotel Co.*, 124 Tenn., 649, 139 S. W., 715, 39 L. R. A. (N. S.), 580; *Swift & Co.* v. *Memphis Cold Storage Warehouse Co.*, 158 S. W., 480.

An effort has been made to show that the defendant flume company has been oblivious of its duties to the public and has conducted its operations almost exclusively in the interest of the Patterson Lumber Company. This is strenuously denied by the defendant. If these charges are true, parties injured can obtain redress by appropriate proceedings. Such misconduct on the part of defendant might furnish grounds for its dissolution at the suit of the State, but it furnishes no ground upon which to maintain the bill herein filed by complainant.

The chancellor's decree will be affirmed.