Doty v. Telephone & Telegraph Co.

D. M. DOTY *v.* AMERICAN TELEPHONE & TELEGRAPH COM-
PANY.

(*Knoxville.*     September Term, 1910.)

1. **TELEPHONE COMPANIES. Incorporation and organization
was authorized by Acts 1883, ch. 232, amending Acts 1875, ch.
142.**

The incorporation, chartering, creation, and organization of tele-
phone companies, with the power to construct and operate
telephone lines for the transmission of messages, and to con-
duct a telephone business, with the implied grant of such
incidental powers as are absolutely or reasonably necessary
to accomplish or effect the purposes of their creation and or-
ganization, and not limited to the power of merely manufactur-
ing electricity for telephoning purposes, was authorized by
Acts 1883, ch. 232, amending Acts 1875, ch. 142, so as to em-
brace, in its first section, telephone companies among the
corporations that may be organized; and, by its second section,
authorizing such telephone corporations to manufacture elec-
tricity for telephoning purposes, etc., and, by its third section,
authorizing the consolidation of companies to construct and
operate telephone lines. (*Post, pp.* 334-343.)

Acts cited and construed: Acts 1875, ch. 142; Acts 1883, ch. 232,
secs. 1-3. See Acts 1907, ch. 134.

Cases cited and approved: Jonesboro v. McKee, 2 Yerg., 167,
170; Bank v. Jacobs, 6 Humph., 515, 521; Miller v. Andrews,
3 Cold., 380; Memphis v. Adams, 9 Heisk., 518; Memphis v. Gas
Co., 9 Heisk., 531; Turnpike Co. v. Montgomery Co., 100 Tenn.,
417; Turnpike Co. v. Davidson Co., 106 Tenn., 258; Herring v.
Ruskin Cooperative Association (Tenn. Chy. App.), 52 S. W.,
327.

Case cited and overruled: Telephone Co. v. Nashville, 118
Tenn., 1.

Doty v. Telephone & Telegraph Co.

2. SAME. Same. Whatever of the usual powers were lacking under Acts 1883, ch. 232, were conferred by Acts 1885, ch. 66.

Whatever of the usual powers exercised or required by telephone companies might have been lacking in telephone companies chartered under Acts 1883, ch. 232, were conferred upon them by Acts 1885, ch. 66, expressly authorizing such corporations to construct and maintain lines over the public highways and streets, and over the lands of private individuals, and giving them the right of eminent domain. (*Post, pp.* 335, 336, 342, 343.)

Acts cited and construed: Acts 1883, ch. 232; Acts 1885, ch. 66.

3. SAME. Lawful existence, with right to erect poles and string wires, is recognized by Acts 1885, ch. 135.

Acts 1885, ch. 135, recognizes the lawful existence of telephone companies, with the right to erect poles, string wires, etc.; for this act prohibits telephone companies from attaching their lines to the poles of other telephone companies without the consent of the latter, and provides methods for the condemnation of the property of private corporations by telephone companies. (*Post, pp.* 342, 343.)

Acts cited and construed: Acts 1885, ch. 135.

4. WORDS AND PHRASES. Abbreviation "etc." stands for "et cetera," and means "and others," or "and other things," and imports other purposes like those already named.

The abreviation "etc.," occurring in Acts 1883, ch. 232, sec. 2, authorizing telephone corporations to manufacture electricity for telephoning purposes, "etc.," stands for the Latin words "et cetera," and means "and others," or "and other things," and when used in connection like this, it is frequently construed to import other purposes of like character with those already named; and as used in this statute, it means that telephone companies are not confined in their powers to the manufacture of electricity, but may do other things for telephoning purposes. (*Post, pp.* 340, 341.)

Acts cited and construed: Acts 1883, ch. 232, sec. 2.

Doty v. Telephone & Telegraph Co.

5. **TELEPHONE COMPANIES.** Powers to be conferred; enumer-ation of powers excludes other; incidental or implied powers.

The general rule undoubtedly is that a corporation has only such powers as its charter confers, and that the enumeration of powers therein excludes those not named; but the absence of express enumeration does not exclude such incidental powers as are reasonably necessary to accomplish the corporate pur-poses; for a corporation has such implied powers as are nec-essarily implied from those granted. (*Post, pp.* 338-340.)

See citations under the first headnote.

6. **STATUTES.** Words to be given their usual and natural significance.

In construing statutes, words should be given their usual and natural significance. (*Post, p.* 341.)

7. **TELEPHONE COMPANIES.** Word "telephone" implies the transmission of intelligence, messages, or sound to a far point.

The word "telephone" itself implies the transmission of intelli-gence, messages, or sound to a far point. To incorporate a telephone company, without the power to transmit intelligence or sound, would be to commit a solecism. (*Post, p.* 342.)

8. **EMINENT DOMAIN.** Application to landowner for telephone right of way is not a condition precedent to jurisdiction of con-demnation proceedings.

The application to the landowner for the right of way is not a condition precedent to the jurisdiction of the condemnation proceedings under a statute (Acts. 1885, ch. 66) whose first section gives telephone companies the right to construct, main-tain, and operate telephone lines, necessary for the speedy transmission of intelligence, on and over the land of private individuals and others, a right that is unconditionally given, provided just damages shall be paid to the owners by reason of the occupation of such lands, and whose second section authorizes condemnation proceedings in case of failure, upon application to the landowner, to secure a right of way, by con-

Doty v. Telephone & Telegraph Co.

sent, contract, or agreement, and relates only to the remedy, and not to the right of occupation, and is barely a recognition of the right of the parties to settle the matter without litigation. (*Post, pp.* 334, 343, 347.)

Acts cited and construed: Acts 1885, ch. 66, secs. 1 and 2.

Cases cited and approved: Bigelow v. Railroad, 2 Head, 624.

9. **TELEPHONE COMPANIES.** Have all the powers and privileges with reference to rights of way as other corporations organized for internal improvements.

Under the statute (Acts 1883, ch. 232) authorizing the incorporation and organization of telephone companies, and under the statute (Acts 1885, ch. 66) authorizing telephone companies to construct and operate their lines over the lands of private individuals and others, and under the statute (Acts 1885, ch. 135) recognizing the lawful existence of telephone corporations, with their right to erect poles, string wires, etc., telephone companies, chartered and organized under said statutes, are given all the powers and privileges with respect to the holding of private property taken for rights of way that are conferred by sections 1844 to 1867 of Shannon's Code, upon other corporations organized for internal improvements.

Code cited and construed: Secs. 1844-1867 (S.); secs. 1549-1572 (M. & V.); secs. 1325-1348 (T. & S. and 1858).

Acts cited and construed: Acts 1883, ch. 232; Acts 1885, chs. 66 and 135.

10. **EMINENT DOMAIN.** Landowner cannot maintain ejectment for occupation of his land for right of way for telephone line, without condemnation; and he is confined to his statutory remedy to recover damages.

Under the statute (Acts 1885, ch. 66) authorizing telephone companies to construct and operate their lines over the lands of private individuals and others, upon payment of just damages, and authorizing condemnation proceedings, the landowner cannot maintain ejectment against any such company so

Doty v. Telephone & Telegraph Co.

occupying his land without his consent and without compensation made; for the landowners in such cases are confined to their statutory remedy through proceedings to recover damages. (*Post, pp.* 346, 347.)

Acts cited and construed:   Acts 1885, ch. 66.

Cases cited and approved:   Colcough v. Railroad, 2 Head, 172; Railroad v. Adams, 3 Head, 597; Railroad v. Cochrane, 3 Lea, 479; Parker v. Railroad, 13 Lea, 670; Saunders v. Railroad, 101 Tenn., 206.

11. SAME. Landowner's remedy for telephone company's occupation of his land must be commenced within twelve months, or it will be barred.

Under the statute (Acts 1885, ch. 66) authorizing telephone companies to construct and operate their lines over the lands of private individuals and others, and under the statute (Shannon's Code, sec. 1867) requiring the statutory remedy for the recovery of damages for property taken for public use to be commenced within twelve months after possession is taken, a suit to recover the damages for the occupation of land by a telephone company must be brought within that period, or the remedy will be   barred.   (*Post, p.* 347.)

Code cited and construed:   Sec. 1867 (S.); sec. 1572 (M. & V.); Sec. 1348 (T. & S. and 1858).

---

FROM HAMILTON.

---

Appeal in error from the Circuit Court of Hamilton County.   M. M. Allison, Judge.

W. A. Schoolfield and Pritchard & Sizer, for plaintiff in error.

Watkins & Thompson, for defendant in error.

MR. JUSTICE GREEN delivered the opinion of the Court.

This is an ejectment suit, brought by plaintiff in error to recover from the American Telephone & Telegraph Company, a New York corporation, certain land taken by the American Telephone & Telegraph Company, a Tennessee corporation, and afterward conveyed by the Tennessee company to the New York company, a portion of which land it was alleged the latter company unlawfully held and detained; the reference being to that portion of the land occupied by the poles, wires, cross-arms, etc., of defendant company. Pleas were filed, including a plea of the statute of twelve months limiting actions brought against corporations authorized to take lands for works of internal improvement. Shannon's Code, section 1867. There was a judgment for the defendant below.

Plaintiff in error relies on two propositions in this court.

First. It is said that under the provisions of Shannon's Code, section 1832, it is a condition precedent to the taking and holding of lands by a telephone company, under the laws of eminent domain, that it should first fail, upon application to the landowner, to secure a right of way by consent, contract, or agreement; that, unless such condition was complied with, the landowner was entitled to all the remedies against such corporation which he would have against any other trespasser.

Second. It is said that at the time of the organization of the American Telephone & Telegraph Company

of Tennessee, in 1895, there was no law authorizing the incorporation of a telephone company with power either to construct or operate a telephone line, and that, as such ·corporations could not be legally chartered, they could not, of course, assert the rights of eminent domain.

We will consider the last proposition of plaintiff in error first.

Chapter 232 of the Acts of 1883, an act to amend the general incorporation Act of 1875, is as follows:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that chapter 142 of the Acts of 1875, entitled 'An act to provide for the organization of corporations,' approved March 23, 1875, be and the same is hereby amended so as to embrace electric light companies, electric light and power companies, telephone companies, telephone and power companies.

"Section. 2. Be it further enacted that the charter for any of the above companies shall be as follows:

"Be it known that (here insert the names of five or more persons above the age of twenty-one years) are here by constituted a body politic and corporate by the name and style (here insert the name of the corporation), for the purpose of manufacturing electric light, or for the purpose of manufacturing electric light motive power, electrotyping, etc., or for the purpose of manufacturing electricity for telephoning purposes, etc.   (State fully the objects of the company, whether one or more of the above purposes.)   The general pow-

ers of said corporation are (here insert the powers as contained in section 5 of the Acts of 1875, chapter 142).

"Section 3. Be it further enacted, that all companies of the character designated in this act, or similar ones now incorporated in substantial compliance with this act or the Act of 1875 aforesaid, shall be and are hereby declared to be legal corporations, and it shall be lawful for telephone or electric light companies now or hereafter incorporated to consolidate into one corporation, or partially consolidate or co-operate in such manner as the respective corporations may determine, with the concurrence of the stockholders of each, in full meeting assembled;

"But it is provided that all rights and privileges conferred by this act shall be subject to revocation and repeal."

It is argued that under the provisions of this act, a telephone company can be chartered only for the purpose of manufacturing electricity for telephoning purposes, and that said act confers no power to construct lines, operate exchanges, or to do other things of like character incidental to the telephone business.

In support of this argument, plaintiff in error quotes certain language from the opinion of a former member of this court in the case of *Home Telephone Company* v. *Nashville*, 118 Tenn., 1, 101 S. W., 770.

It was there said that not until the passage of the Talbert bill (chapter 134 of the Acts of 1907) was there any authority under our statutes to incorporate a telephone company, whose purpose it was to transmit mes-

Doty v. Telephone & Telegraph Co.

sages as the complainant in that case proposed to do. "It is true," said the learned justice, "that the act of 1883 authorized charters for telephone companies, but that act simply gave such companies the power to manufacture electricity for telephone purposes—that is, to erect and install power houses—but gave no authority to erect a pole, or string a wire, or to install a plant for the transmission of messages."

It will be seen from an examination of the case referred to that the question before the court and the question decided by the court was the right of a telephone company to operate under a charter provided for telegraph companies. It was held that a telephone company had no such right. The complainant there had not attempted to incorporate as a telephone company, and the question as to whether there was authority for the incorporation of telephone companies, with power to construct lines and transmit messages, was not before the court. So the expressions above quoted were obiter, and we may consider this question as an open one, in so far as any holding of this court is concerned.

The act of 1883 undoubtedly and in express terms authorized the incorporation of telephone companies and telephone and power companies. Is it reasonable to suppose that, after providing for the creation of telephone companies, it was the intention of the legislature to restrict their powers to such an insignificant detail of the business as the manufacture of the necessary elec-

tricity? The electricity for telephone purposes is made by small batteries, not in power houses, and it requires but little of their equipment and a trivial portion of their attention and activities for telephone companies to manufacture all needed electricity.

The general rule undoubtedly is that the powers of a corporation are only such as its charter confers, and that, when the charter undertakes to enumerate the powers thereby given to the corporation, it is to be construed as withholding from it other powers not mentioned. This rule is usually qualified, however, by by the statement that failure to enumerate them in the charter does not deprive a corporation of such incidental powers as are reasonably necessary to accomplish the purposes for which it was organized.

Certainly, when a corporation is created for a particular purpose, by implication it is vested with such powers as are absolutely necessary for it to effect the purposes of its creation.

It is not necessary that any powers at all be expressed in the charter in order to endow it with many rights. The mere creation of a corporation carries with it certain powers, which are regarded as incidents of corporate existence.

It was long since held in this State that, while "a corporation is the creature of the charter that institutes and gives it being, yet it is equally true that some things by common law are incident to a corporation, which it may do without any express provision in the charter of incorporation, as to sue and to be sued, purchase and

sell, make by-laws, and have a common seal." *Jonesboro* v. *McKee*, 2 Yerg., 167, 170.

For other powers impliedly conferred on corporations, see 1 Clark & Marshall on Corporations, p. 385.

In addition to these general powers, imputed to all corporations, whether expressly conferred or not, there are other implied powers, peculiar to each corporation, and dependent on the nature of the particular corporation.

As said by this court in an early case: "The creation of a corporation for a specific purpose implies a power to use the necessary and usual means to effectuate that purpose." *Union Bank* v. *Jacobs*, 6 Humph., 515, 521.

This case has since been followed in Tennessee by many others, holding that, regardless of their enumeration in the charter, corporations had such implied powers as were necessary for them to accomplish the objects for which they were created. *Memphis* v. *Memphis Gayoso Gas Co.*, 9 Heisk., 531; *Memphis* v. *Adams*, 9 Heisk., 518, 24 Am. Rep., 331; *Miller v. Andrews*, 3 Cold., 380, and others.

The rule, otherwise stated, is that a corporation has such implied powers as are necessarily implied from those granted. *Herring* v. *Ruskin Co-op. Ass'n* (Ch. App.) 52 S. W., 327, affirmed by this court.

This doctrine of implied powers is recognized in the latter cases of *Turnpike Co.* v. *Davidson County*, 106 Tenn., 258, 61 S. W., 68, and *Turnpike Co.* v. *Montgomery County*, 100 Tenn., 417, 45 S. W., 345, 58 L. R. A., 155, in which cases the holding is that any powers as-

serted must be given in unmistakable terms or by an implication equally clear.

When the legislature, therefore, authorized the incorporation of telephone companies, the intention was that such companies should engage in the telephone business. They were authorized for the specific purpose of carrying on the telephone business. That being true, the power was given to such corporations by implication to employ the necessary and usual means to effectuate that purpose. The usual and necessary means being the erecting of poles, the stringing of wires, the operating of exchanges, etc., the power to do such things was probably implied in telephone companies organized under the act of 1883. The power to conduct a telephone business being granted, these others seem clearly and necessarily implied. That which is fairly implied is as much granted as that which is expressed.

That the legislature did not intend to limit the functions of such companies merely to the manufacture of electricity in connection with the telephone business is unmistakably indicated by the use of the words "et cetera," abbreviated "etc." It will be remembered that the act provides for five persons to be constituted a body politic and corporate, "for the purpose of manufacturing electricity for telephoning purposes, etc." The words "et cetera," meaning "and others," or "and other things" in a connection like this, are frequently construed by the courts to import other purposes of like character with those already named. We think this is the

proper construction to be given to them here— that it was not the legislative intent to confine the powers of telephone companies to the manufacture of electricity, but to confer on such companies the power to do other things, of like character, incidental to the business. These words, or this abbreviation, "etc.," must have been used for some purpose. It should not be construed as meaningless and it is our duty to give it its usual and natural significance. Giving to the abbreviation a natural meaning, the conclusion is easy that the intention of the act was to give to telephone companies the right to do other things in addition to manufacturing electricity. It empowered them, not only to manufacture electricity for telephoning purposes, but to do other things for telephoning purposes.

The legislature itself fully recognized the right of telephone companies, with the usual powers, to obtain a charter under our statutes, and to conduct their business in the customary manner. Chapter 66 of the Acts of 1885 was entitled "An act granting certain privileges to and prescribing the duties of telegraph and telephone companies, prohibiting discrimination between patrons," etc., etc. It provided that any corporation organized by virtue of the laws of this State for the purpose of transmitting intelligence by magnetic telegraph or telephone might operate and maintain lines for the speedy transmission of intelligence over the public highways and streets of the cities and towns of the State, and over the lands of private individuals, and other places named. The act further gave to telephone com-

panies the right of eminent domain for the purposes of establishing its lines.

The power to transmit intelligence may certainly be implied from the act of 1883, authorizing the incorporation of telephone companies. The word "telephone" itself implies the transmission of intelligence, messages, or sound for or to a far point. To incorporate a telephone company, without the power to transmit intelligence or sound, would be to commit a solecism. To give the act such a construction would be to announce a contradiction in terms. There can be no doubt but, when the legislature authorized the creation of telephone corporations, it was intended that such corporations, together with incidental powers, should have power to transmit intelligence, and they were therefore clearly within the scope of the provisions of chapter 66 of the Acts of 1885.

Whatever of the usual powers might have been lacking in telephone companies chartered under the act of 1883 were conferred upon them by chapter 66 of the Acts of 1885, which in express terms gave such corporations the right to construct and maintain lines over the public highways and streets, and over the lands of private individuals, and also gave them the right of eminent domain.

Chapter 135 of the Acts of 1885 recognized the lawful existence of telephone companies, with the right to erect poles, string wires, etc.; for this act prohibits telephone companies from attaching their lines to the poles of other telephone companies without the con-

sent of the latter, and provides methods for the condemnation of the property of private corporations by telephone companies.

So that, construing all these acts together, we are of opinion, and so hold, that since the passage of chapter 232 of the Acts of 1883 there has been authority in Tennessee for telephone companies to organize for the purpose of transmitting messages and doing other things incidental and necessary to the telephone business, and that since the passage of chapter 66 of the Acts of 1885, such companies have been endowed with full power to construct and maintain lines and to exercise the right of eminent domain.

The other contention of plaintiff in error is that an application to the landowner, and a failure thereupon, to secure a right of way, by consent or contract, is a condition precedent to the taking and holding land for such purposes by a telephone company.

The first two sections of chapter 66 of the Acts of 1885 are:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that any person or corporation organized by virtue of the laws of this State, or of any other State of the United States, or by virtue of the laws of the United States, for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence the equivalent thereof, which may be hereafter invented or discovered, may construct, operate, and maintain such telegraph, telephone or other lines necessary for the speedy

transmission of intelligence along and over the public highways and streets of the cities and towns of this State, or across and under the waters, and over any lands or public works belonging to this State, and on and over the lands of private individuals, and upon, along, and parallel to any of the railroads or turnpikes of this State, and on and over the bridges, trestles or structures of said railroads: Provided, that the ordinary use of such public highways, streets, works, railroads, bridges, trestles, or structures and turnpikes be not thereby obstructed, or the navigation of said waters impeded, and that just damages shall be paid to the owners of such lands, railroads and turnpikes, by reason of the occupation of said lands, railroads and turnpikes, by said telegraph or telephone corporations.

"Section 2. That in the event such telegraph or telephone companies should fail, upon application to such individuals, railroads or turnpike companies, to secure such right of way, by consent, contract, or agreement, then such telegraph or telephone corporations shall have the right to proceed to procure the condemnation of such property, lands, rights, privileges and easements, in the manner prescribed by law for taking private property for works of internal improvement."

The argument made for plaintiff in error is based on the second section of this act, and is that a telephone company is given the right to take private property only on a certain condition, namely, that it shall first seek to obtain such property by agreement with the owner, and that until this condition is

complied with a telephone company has no more right to hold private property taken by it than would a banking or mercantile corporation. In other words, the proposition is that a telephone company has no rights, such as are usually given to corporations organized for internal improvements, until it complies with the condition mentioned.

It will be observed, however, that the right to construct, maintain, and operate telephone lines necessary for the speedy transmission of intelligence over the lands of private individuals is unconditionally given to telephone companies by section 1 of this act, provided, only that just damages shall be paid to the owners by reason of the occupation of said lands.

In our oinion, section 2 of this act relates only to the remedy of condemnation, and not to the right of occupation.

Under a former decision of this court, such language as that contained in this statute, and relied on by plaintiff in error, cannot even be considered a condition upon which depends the right of condemnation.

The charter of the Mississippi Central & Tennessee Railroad Company, which did not materially differ from most of the other railroad charters, provided that, where the company and the owner of the soil required for the road failed to agree upon the terms of purchase and sale, the court should appoint commissioners, etc. It was urged upon the court that this was a condition upon which depended the right of condemnation, and that the courts were without jurisdiction to entertain con-

demnation proceedings until such condition was complied with. In disposing of this argument, the court said:

"The position assumed is that this is a condition procedent, and until it is complied with— that is, until an effort to agree is made, and fails—that the courts have no jurisdiction. We do not think this is the proper construction of the act. It has never been so understood in any of the numerous cases which have been before us, and under various charters containing similar provisions no such question has ever been made.

"The company have a perfect right to take the land for their road, without consent or negotiation, and are guilty of no trespass. There accrues to the owner of the soil a right, just as perfect and unquestionable, to just compensation. The reference in the charter to the probability that the parties might agree, without a resort to the courts, was not intended to make it a condition to the jurisdiction. It was barely a recognition of the right of the parties to settle the matter without litigation, which they would have enjoyed just as fully without it, in that as well as any other case. It was surplusage in the act, and no legal effect can be given it. The construction contended for would be exceedingly inconvenient, and in some cases impracticable. The owners of the soil might be nonresidents, unknown, or under disability." *Bigelow* v. *Railroad,* 2 Head, 624.

We therefore conclude, under the statutes construed, that telephone companies, organized under said stat-

Doty v. Telephone & Telegraph Co.

utes, are given all the powers and privileges with respect to the holding of private property, taken for rights of way, that are conferred on other corporations, organized for internal improvements, by sections 1844-—1867 of Shannon's Code.

This being so, the suit of plaintiff in error must fail. The action of ejectment does not lie in such cases against such corporations, and the landowner is confined to his statutory remedy. *Saunders* v. *Railroad,* 101 Tenn., 206, 47 S. W., 155; *Colcough* v. *Railroad,* 2 Head, 172; *Railroad* v. *Adams,* 3 Head, 597; *Railroad* v. *Cochrane,* 3 Lea, 479; *Parker* v. *Railroad,* 13 Lea, 670. The statutory remedy must be commenced within twelve months after possession has been taken, and was therefore barred at the time of the bringing of this suit. Shannon's Code section 1867.

The judgment of the court below will be affirmed.