JOHNSON CITY, TENNESSEE, Plaintiff in Error,

*v.*

J. E. CLONINGER, Defendant in Error.

372 S. W. 2d 281

(*Knoxville*, September Term, 1963.)

Opinion filed November 6, 1963.

WALTER LEE PRICE, Johnson City, for plaintiff in error.

STREET, BANKS, MERRYMAN & MUSICK, Elizabethton, THOMAS E. MITCHELL, Johnson City, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is an appeal from the judgment of the Circuit Court denying a motion of the City of Johnson City to quash a writ of supersedeas and dismissing the City's

original condemnation suit against James E. Cloninger, defendant in error.

The case was commenced as a condemnation proceeding by the City of Johnson City, Tennessee, pursuant to the procedure set out in T.C.A. secs. 6-1007 through 6-1011. As set out in defendant in error's statement of the facts, the resolution passed by the Board of City Commissioners for Johnson City stated that it was necessary to acquire said property for public park purposes. Pursuant to this resolution a condemnation commission was appointed to go upon the property of Mr. Cloninger and assess compensation for its taking in fee. This was duly done and the compensation was fixed by the committee at $17,200.00.

The property owner filed a petition for supersedeas alleging that the City had undertaken to condemn two tracts of land belonging to him in the aggregate amount of 10.63 acres; that the compensation awarded, even if the land was subject to condemnation, was wholly inadequate; that the use for which the property was being condemned, "public park purposes", was merely a subterfuge and the real purpose for which the City was attempting to take his property was for a golf course, or and extension of an existing golf course; and that the City of Johnson City was wholly without authority to condemn and take his property for such a purpose.

The petition was later amended to allege that the condemnation was in violation of Sections 8 and 21 of Article 1 of the Constitution of Tennessee, and the Fourteenth Amendment to the Constitution of the United States.

The City filed a motion to quash the writ of super-

sedeas and also answered the petition, denying all the material allegations thereof.

At the hearing on the motion and answer it was stipulated that the land to be condemned would be a part of the municipal park, which contains a number of different recreational facilities, and that this particular tract was to be used as a part of the golf course.

The trial court ruled that the City had no right to acquire defendant's land for use as a golf course, dis-missed the original condemnation action and disallowed the City's motion to quash the writ of supersedeas. The City excepted to the action of the trial court, prayed for and was granted an appeal in error to this Court.

The plaintiff in error has made four assignments of error, all of which challenge the correctness of the court's holding that the construction and maintenance of a municipal golf course as a part of a municipal park is not a purpose for which a municipality may acquire land by the exercise of the power of eminent domain.

The statutory authority of the City of Johnson City to exercise the power of eminent domain is derived from two sources. (1) Article III, Chapter 189, Private Acts of Tennessee, 1939, sets out the corporate powers of the City of Johnson City:

"(10) *Eminent domain.*—To condemn property, real or personal or any easement, interest, or estate or use therein, either within or without the city, for present or future public use; such condemnation to be made and effected in accordance with the terms and provisions of sections 3109-3132 of the Code of Tennessee, or in such other manner as may be provided by law.

\* \* \* \* \* \*

"(16) *Highways, streets, parks.*—To establish, \* \* \* parks, public grounds, and squares, \* \* \* and to regulate the use thereof within the corporate limits, and property may be taken and appropriated therefor under the provisions of the general law.

\* \* \* \* \* \*

"(33) *Particular powers enumerated do not exclude others, when.*—The enumeration of particular powers in this charter is not exclusive of others, nor restrictive of general words or phrases granting powers, \* \* \* they shall be construed so as to permit the city to exercise freely any one or more such powers as to any one or more such objects for any one or more such purposes."

(2) T.C.A. secs. 11-902 sets out the general powers of a municipal corporation in this regard:

"*Dedication and acquisition of property for recreational purposes.*—The governing body of any city or town, or county or any school district may dedicate and set apart for use as playgrounds, recreation centers, and other recreational purposes, any lands or buildings, or both, owned or leased by such municipality and not dedicated or devoted to another and inconsistent public use, and such municipality may, in such manner as may now or hereafter be authorized or provided by law for the acquisition of lands or buildings for public purposes, acquire or lease lands or buildings, or both, for said *recreational purposes,* or if there be no law authorizing such acquisition or leasing of such lands or buildings, the governing body of any such municipality is hereby empowered to acquire

lands or buildings, or both, for such purposes by gift, purchase, *condemnation* or lease." (Emphasis supplied.)

The defendant has argued ably and earnestly that these statutes do not constitute authority for the condemnation of his land for use as part of a municipal golf course which, together with other recreational facilities, will make up a municipal park. We must hold otherwise. Under the statutes the City of Johnson City had the power to acquire defendant's property under the power of eminent domain for the aforesaid purposes.

■ ■ The terms of T.C.A. sec. 11-902 clearly encompass a municipal golf course, as acquired "for said recreational purposes". Even if the terms of this section were not clear, it would be unreasonable to exclude a municipal golf course as part of a park from the general term "park purposes". The word "park" is defined in Webster's Third New International Dictionary, Unabridged, as "a tract of land maintained by a city or town as a place of beauty or of public recreation." "A park is a pleasure ground for the recreation of the public to promote its health and enjoyment." *Booth v. City of Minneapolis,* 163 Minn. 223, 203 N.W. 625, 626; *Williams v. Gallatin,* 229 N.Y. 248, 128 N.E. 121, 122 [18 A.L.R 1238]." Black, Law Dictionary (4th ed. 1957).

■ The word "park" is certainly broad enough, in the every day sense of the word, to include a golf course as well as a swimming pool, croquet court, baseball diamond, band shell, zoo, and a host of other recreational facilities to which the public normally turn for relaxation and recreation.

■ The City quite properly used the procedure set out in T.C.A. secs. 6-1007 through 6-1011 in condemning defendant's property. *Chattanooga v. State of Georgia*, 151 Tenn. 691, 698, 272 S.W. 432 (1924).

The defendant contends that even if this Court holds that the statutes in question authorize the taking of his property by condemnation for the aforesaid purposes, we must conclude that such an application of these statutes would violate Article 1, Sections 8 and 21 of the Constitution of Tennessee, and the due process clause of the Fourteenth Amendment to the Constitution of the United States, because, under both, due process prohibits the taking of a man's property unless it is taken for a "public use", irrespective of whether or not he is compensated for said taking.

The basis of defendant's contention is that a municipal golf course as a part of a public park is not a "public use". The weight of reasoning and the trends in the courts of this State and the majority of the other states are against this contention.

■ Having determined that the City has the power and authority under the aforesaid statutes to condemn the property in question, the remaining issue then is whether the condemnation of defendant's property by Johnson City for use as part of one of the recreational facilities making up a public park, to-wit: a golf course, is a condemnation for a public use. If the use is not "public" then the condemnation violates the provisions of our State and Federal Constitutions, supra. These provisions permit the condemnation of private property only for "public uses".

The logical resolution of this issue requires the definition of the phrase "public use" and an application of said definition to the facts of the instant case. But, as pointed out by both parties, there is no absolute definition which fits.

The theories, principles, and case law surrounding the meaning of this phrase are set out and ably discussed in Chapter 7, 2 Nichols, Eminent Domain, 417-601 (3rd Ed. 1950), and the 1963 supplement.

This treatise points out that the phrase does not lend itself to a precise general definition. The phrase means different things in different contexts.

 There are at least three general classes of eminent domain cases in which the use which will meet the "public use" criterion is measured by different standards depending on the character of the condemnor. (1) Condemnation by the State or municipality for a project which it will carry out and use or operate; (2) condemnation by a public service corporation which the State will regulate and which provides some necessity to the public; and (3) condemnation by or for the use of a private individual or corporation where such is necessary for the public welfare.

The "public use" which will justify condemnation is different for each of these three situations. The approach by the courts should be, and is, different in each situation.

It serves no useful purpose to apply the language used by the courts in consideration of a case of condemnation by a railroad or a public service corporation to condemnation by a municipality itself for a project which it will carry out and operate. There is a definite distinction

between the two situations and the applicable law is different.

Illustrative of this is a case cited by defendant of *Alfred Phosphate Company v. Duck River Phosphate Company*, 120 Tenn. 260, 113 S.W. 410, 22 L.R.A.,N.S., 701, (1907). There the condemning authority was a private corporation seeking to condemn a right of way over the land of another so as to be able to carry on its business, which it averred was to the best interest of the community. The language of the Court which defendant quoted was certainly applicable in that case, but when placed in the context of the situation in the instant case, it has no application.

It is only reasonable that a private corporation or a public service corporation be required to demonstrate public necessity as a prerequisite of its exercise of the power of eminent domain for what it avers is a "public use". However, the instant case concerns neither a private nor a public service corporation, but a municipal government. Therefore, the language is totally inapplicable.

The first of these three classes, in which the instant case belongs, is discussed in 2 Nichols, Eminent Domain, Section 7.5(1). That is, condemnation by the government, its subdivisions or agencies. There it is pointed out that when a municipality seeks to acquire a parcel of land on which to carry on its governmental functions, or by means of which to directly enhance the safety, health or comfort of the community, there is no requirement of "use by the public" in the sense that the individual members of the public must have the right to use the land so taken. It is stated that as long as the use is

by the public through its officers or agents, or by its enjoyment of greater safety, health and comfort, eminent domain may unquestionably be employed and that this is true even though the public is to be rigorously excluded from the land taken.

"Where the question of 'public use' is a close one, the tendency of the courts is to be more liberal in favor of permitting a taking where the condemnor is the government or one of its subdivisions or agencies." 2 Nichols, Eminent Domain, Section 7.5(1).

In the instant case the public is not to be excluded; in fact, since it is a public park and municipal golf course every citizen will have the right to play on this golf course if he so chooses. It is true that there are those in the community who do not choose to play golf or are physically unable to do so, but this is true of almost any activity that is carried on in a park. To cite a few: swimming, tennis, and nature walks.

■ Defendant in his brief cites McQuillin—Municipal Corporations, Volume 10, Section 28.50 to the effect that "municipal property devoted to park purposes is a pleasure ground, for rest and exercise in the open air". He also quotes from Section 28.51 of that volume:

"Likewise the acquisition of land for a public park is for a 'public purpose' so as to authorize condemnation proceedings for such purpose. * * *"

In oral argument counsel stated that it would be permissible under the law to condemn defendant's land for a park in the "traditional sense of that word" but that to condemn it for a golf course which was a part of a park was not such a "public use" as is the park itself. We see

no legal distinction between the two. The golf course is just part of the park.

In *Southern Railroad v. Memphis,* 126 Tenn. 267, 148 S.W. 662, 41 L.R.A.,N.S., 828 (1912), this Court held:

"Public parks are for the benefit of the public, and property taken for such uses falls within a proper exercise of the power of eminent domain." 126 Tenn. at 283-284, 148 S.W. at 666, 41 L.R.A.,N.S., 828.

For the reasons set out above we must reverse the judgment of the trial court and remand the cause for submission to a jury on the issue of damages to be awarded to the defendant for the taking of his property.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.