**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner–Appellee,**

v.

**William I. PROFFITT and Betty Jean Proffitt, Respondents–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

March 30, 1995.

Permission to Appeal Denied July 3, 1995.

John Knox Walkup, Jack W. Robinson, Jr., M. Taylor Harris, Jr., Gullett, Sanford, Robinson & Martin, Nashville, Ronald W. Jenkins, Herndon, Coleman, Brading & McKee, Johnson City, for petitioner-appellee.

C. Todd Chapman and K. Kidwell King, Jr., King & King, Greeneville, for respondents-appellants.

Charles W. Burson, Atty. Gen. and Reporter and Cynthia L. Paduch, Asst. Atty. Gen., Knoxville, for State of Tennessee.

## OPINION

FRANKS, Judge.

In this action for condemnation to lay an underground fiber optic telephone cable, the Trial Judge ruled in plaintiff's favor and the issue of damages has been tried to a jury which awarded defendants $3,780.00.

Defendants have appealed.

Defendants' land is in the route of AT & T's fiber optic communications cable running from Asheville, North Carolina to Knoxville, Tennessee. The cable was to be installed essentially along the same route as several above-ground transmission lines already established by the Tennessee Valley Authority.

With respect to defendants' land, TVA owns a one hundred fifty foot easement over the property as a result of condemnation proceedings in 1952 and has erected a number of steel towers to accommodate high tension lines. AT & T became interested in the route for its communications and entered negotiations with TVA to explore the possibility of using the towers and also entered negotiations with defendants to purchase the right-of-way. Ultimately, AT & T decided to install an underground cable and when negotiations with defendants reached an impasse, AT & T filed a Petition for Condemnation and the judgment at issue followed.

■ First, defendants argue the language of T.C.A. § 65–21–204 [1] requires AT & T to fail to obtain its right-of-way by consent,

contract, or agreement as a condition precedent to exercising its right of condemnation. It is contended that since TVA was willing to enter into a joint venture with AT & T to run the cable on the extant steel towers, AT & T could not condemn the property for its use because it had not "failed to obtain its right-of-way." Moreover, defendants insist condemnation of the property for the purpose of running an underground cable is in excess of what is necessary for public use, and AT & T's action in pursuing condemnation of the land was arbitrary and capricious.

In *Doty v. American Telephone and Telegraph Co.*, 123 Tenn. 329, 130 S.W. 1053 (1910), the Supreme Court was confronted with the question of whether the statute (then Shannon's Code, section 1832) should be construed to require failure to obtain consent as a condition precedent to the exercise of eminent domain. In this connection, the Court said, "such language as that contained in this statute . . . cannot even be considered a condition upon which depends the right of condemnation." Contrary to defendants' assertion that the Court's statement was only dicta, this was a response by the Court to specific issues raised on appeal. Further, defendants' attempt to distinguish *Doty* from this case on the basis that *Doty* was an ejectment action is without merit. Regardless of the nature of the action, the *Doty* Court construed the language of the statute specifically with reference to the efficacy of the language as it relates to condemnation.

■ As to defendants' charges of arbitrary and capricious actions on AT & T's part, the general rule is that "[b]road discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line, or location of the proposed work or improvement, and . . . the courts will not disturb their action in the absence of fraud,

---

1. T.C.A. § 65–21–204 states in pertinent part: "In the event such telegraph or telephone companies should fail, upon application to such individuals, railroads, companies, to secure such right-of-way, by consent, or agreement, then such telegraph or telephone corporations shall have the right to proceed to procure the condemnation of such property, lands, rights, privileges, and easements, in the manner prescribed by law for taking private property for works of internal improvement."

bad faith, or gross abuse of discretion." 26 Am.Jur. *Eminent Domain* § 113. The Tennessee Supreme Court echoed this rule in *Williamson Co. v. Franklin & Spring Hill Turnpike Co.*, 143 Tenn. 647 (1920), wherein it opined, "It is everywhere settled that, in the absence of a clear and palpable abuse of power, the determination of the necessity for the taking and what property shall be taken is not a question for the judiciary, but for the legislature *or* the body to whom the right of eminent domain is delegated by it." (Citation omitted). *See also Metro. Government v. Huntington Park Associates*, 1988 WL 112912, Tennessee Court of Appeals filed in Nashville, on October 26, 1988.

■ We find no fraud, bad faith, or gross abuse of discretion in AT & T's decision to pursue condemnation in order to install an underground cable within the area of an already existing easement. It appears from the evidence that AT & T had a legitimate reason for deciding on the underground installation as opposed to implementation of other technologies. Moreover, once the cable has been buried, it is much less intrusive to the landowner in that it does not visibly interfere with the use and enjoyment of the land and apparently requires less maintenance.

■ Defendants next argue the language of T.C.A. § 65–21–201 [2] provides for construction and maintenance of communications lines "on and over the lands of private individuals" but not *under* private lands. In support of this construction of the statute, defendants cite a number of cases holding that "grants of powers of eminent domain are in derogation of private property rights and will be strictly construed against the condemnor and liberally in favor of the rights of property owners." We agree this is a correct statement of the rule of construction for statutes granting the power of eminent domain. However, the doctrine of strict construction "does not exclude reasonable and

sound construction of [a] particular statute." *See* 26 Am.Jur.2d *Eminent Domain* § 18. *Accord: District Board of Trustees of Daytona Beach Community College v. Allen*, 428 So.2d 704 (Fla.App.1983); *Hardy v. Grant Township Trustees, Adams County*, 357 N.W.2d 623 (Iowa 1984).

■ Our statute speaks of telecommunication systems yet to be invented or discovered and attempts to provide flexibility in obtaining rights-of-way required to accommodate such technological improvements. The Supreme Court in *Brannan v. American Telephone and Telegraph Company*, 210 Tenn. 697, 362 S.W.2d 236 (1962) concluded the language was broad enough to encompass the construction of microwave towers as opposed to telephone cables strung on towers or poles. In *Buhl v. U.S. Sprint Communications Company*, 840 S.W.2d 904 (Tenn.1992), the Supreme Court dealt with a case involving the laying of an underground communications cable. The issue in that case was whether the laying of the cable within an already existing easement constituted an additional taking, thus entitling the landowners to compensation. The Court did not question the propriety of laying the underground fiber optic cable pursuant to the statutory language, the implication being that such taking was within the ambit of the statute. Additionally, easements taken for the construction of towers pursuant to this statute include the right to lay foundations for the installation of the towers, and obviously such foundations would necessarily extend downward into the land to some depth.

Moreover, WEBSTER'S NEW INTERNATIONAL DICTIONARY, Second Edition Unabridged (William A. Neilson et al. eds., 1958) defines "on" as "[a]t, *in*, or along the surface of." (Emphasis added). The plain meaning of the word "on" as utilized in the statute is expansive enough to include the laying of an underground cable "in" the land

---

**2.** T.C.A. § 65–21–201. Rights-of-way authorized.—Any person or corporation organized for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence the equivalent thereof, which may be invented or discovered, may construct, operate, and maintain such telegraph, telephone, or other lines necessary for the speedy transmission of intelligence, along and over the public highways and streets of cities and towns, or across and under the waters, and over any lands or public works belonging to this state, and on and over the lands of private individuals, and trestles, or structures of such railroads.

as well as on its surface. The Landowner's proposed construction of the statutory language is overly narrow and contrary to the legislative intent to delegate the power of eminent domain to telecommunications corporations to utilize the statute as technology develops.

■ Finally, we find no merit in the appellants' argument that the Trial Court's interpretation of the statute amounts to an unconstitutional grant of power and authority beyond what is reasonable and necessary for public use in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 21 of the Tennessee Constitution.

As we understand their argument, the defendants are contending the legislature has, by using different statutory language in its various grants of the power of eminent domain, created a "hierarchy" of public necessity with corresponding levels of power to exercise eminent domain. It is argued that this "hierarchy" of levels of power is necessary to the constitutionality of the statutes pursuant to the Public Use Clause of the federal constitution. It is at this point the defendants revert to their earlier argument that the language of T.C.A. § 65–21–204 was intended to create a condition precedent to a telecommunications corporation's exercise of eminent domain, such condition operating to properly limit the companies' power to exercise eminent domain within the "hierarchy." This argument is not persuasive. The Tennessee Supreme Court specifically construed the statute as not creating a condition precedent many years ago. *See Doty.*

The defendants' further assert if the language in the statute does not impose a limitation on the exercise of eminent domain, the statute is violative of the Public Use Clause. With respect to this argument, The United States Supreme Court, In *Hawaii Housing Authority et al. v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) stated:

There is, of course, a role for courts to play in reviewing a legislature's judgment of what constitutes a public use, even when the eminent domain power is equated with the police power. But the Court in *Berman [v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954) ] made clear that it is "an extremely narrow one." (Citation omitted) The Court in *Berman* cited with approval the Court's decision in *Old Dominion Co. v. United States,* 269 U.S. 55 [46 S.Ct. 39, 70 L.Ed. 162] (1925), which held that deference to the legislature's "public use" determination is required "until it is shown to involve an impossibility." The *Berman* Court also cited to *United States ex rel. TVA v. Welch,* 327 U.S. 546 [66 S.Ct. 715, 90 L.Ed. 843] (1946), which emphasized that "[a]ny departure from this judicial restraint would result in courts deciding on what is and is not a governmental function and in their invalidating legislation on the basis of their view on that question at the moment of decision, a practice which has proved impracticable in other fields." In short, the Court has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use "unless the use be palpably without reasonable foundation." (Citation omitted)

. . . .

[W]here the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause.

As we find the statutes delegating the power of eminent domain to telephone/telegraph companies rationally related to a conceivable public purpose, we need not further address the federal constitutional issue.

■ With regard to the constitutionality of the statute in question under the state's constitution, as far back as 1899, our Supreme Court in *Ryan v. Terminal Co.,* 102 Tenn. 111, 50 S.W. 744, (1899) stated:

The term "public use" is a flexible one. It varies and expands with the growing needs of a more complex social order. Many improvements universally recognized as impressed with a public use were nonexistent a few years ago. The possibility of railroads was not dreamed of in a past not very remote, yet when they came the Courts, recognizing the important part

they were to perform in supplying a public want, did not hesitate to take control of them as quasi-governmental agents and extend to them the right of eminent domain in order to equip them thoroughly to discharge the duties to the community which followed their grant of franchises. This is equally true as to other appliances which now form important parts of a rapidly widening system of social and commercial intercommunication. So it may be said at the present time that "anything which will satisfy a reasonable public demand for public facilities for travel or for transmission of intelligence or commodities" and of which the general public under reasonable regulations, will have a definite and fixed use, independent of the will of the party in whom title is vested, would be a public use. (Citations omitted)

■■■■■■■ It is well settled that the State may take private property for public use and that it may delegate that power as well to specified entities. It is also clear that the question of what is a public use is within the purview of the courts. *Johnson City v. Clo-*

*ninger*, 213 Tenn. 71, 372 S.W.2d 281 (1963). *See also, Anderson v. Turbeville*, 46 Tenn. 150 (1868). In this connection, the legislature has determined that the transmission of intelligence is a public necessity, and it has empowered companies engaged in the business of transmitting intelligence to exercise eminent domain where necessary to provide such services to the public, and the courts have consistently held that the exercise of eminent domain for this purpose is a public use.

Accordingly, we affirm the judgment of the Trial Court and remand at appellants' cost.

GODDARD, P.J. (E.S.), and SUSANO, J., concur.